**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0562-19T2

SURAIYA BEGUM,

    Plaintiff-Respondent,

v.

SENTHILKUMAR PALANISAMY
HEWITT, a/k/a SENTHIL
KUMAR PALANISAMY,

    Defendant-Appellant,
and

KATHRYN HEWITT,

    Defendant.

_____

Submitted October 13, 2020 – Decided November 16, 2020

Before Judges Currier and Gooden Brown

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-0760-15.

Senthilkumar Palanisamy Hewitt, appellant pro se.

Freidel & Kramer, PC, attorneys for respondent (Talbot B. Kramer Jr., on the brief).

PER CURIAM

In this post-judgment matter, defendant/father appeals from a September 20, 2019 Family Part order denying him reconsideration of a June 4, 2019 order, addressing custody, parenting time, and related issues pertaining to his daughter, Alexis[1], and awarding plaintiff/mother counsel fees. We affirm.

We glean these facts from the record. After the parties married in India, plaintiff, a citizen and resident of Singapore, gave birth to Alexis in October, 2014, in the United States, where defendant, who was born in India, was residing.[2] Although the parties dispute the underlying circumstances of the marriage,[3] the marriage was annulled on October 8, 2015, by entry of a consent

---

[1] As the compelling interest of protecting the child's privacy outweighs the Judiciary's commitment to transparency in this matter, a fictious first name is used for the minor child.

[2] Defendant is a United States citizen.

[3] Plaintiff asserted that after meeting defendant on an online dating site in 2012, a relationship developed, leading to their marriage in India on December 31, 2013, where the parties had travelled to attend defendant's mother's funeral. However, when plaintiff returned to the United States with defendant to give birth to Alexis, she discovered defendant was already married. On the other hand, defendant denied that the parties were ever married and claimed that plaintiff knew he was already married when she returned to the United States with him.

order for judgment of nullity (consent order) signed by Judge Sherri Schweitzer. The consent order, which contained both typed and handwritten provisions, was executed by the parties, who were then both represented by counsel.

In addition to addressing issues related to the annulment of the marriage, the consent order addressed Alexis's custody, care, support, and parenting time. Under the order, the parties "share[d] joint legal custody of Alexis." However, plaintiff was awarded "primary physical custody" and "permitted to relocate to Singapore with . . . Alexis[,]" who would "retain her United States citizenship." Subject to changes made by consent of the parties or court order, defendant was "permitted to liberally visit . . . Alexis in Singapore[,]" with the first visit to be supervised by plaintiff's family. Upon providing proof of completion of a parenting class within one year, defendant's parenting time would thereafter be unsupervised. Defendant was also permitted liberal visitation with Alexis during plaintiff's anticipated trips to the United States during "her annual multi-week work vacation[,]" and was "permitted to exercise regular Skype sessions with Alexis."

Defendant was ordered to pay $247 per week in child support, and plaintiff was ordered to "provide healthcare and health insurance for Alexis in Singapore." Defendant was also ordered to "cooperate with [p]laintiff in

3

correcting" Alexis's name on her "birth certificate . . . to Alexis Begum d/o Senthilkumar." The consent order further provided that both parties had "access to Alexis's education and health records, both in the United States and in Singapore." Notably, pursuant to the consent order, New Jersey would "retain jurisdiction over all issues related to the custody and care of Alexis[,]" with New Jersey law "govern[ing,]" and the parties were permitted, but not required, to "domesticate [the order] in Singapore." The parties acknowledged "entering into th[e o]rder voluntarily, without threat, force, coercion[,] or duress[,]" and plaintiff "waive[d] all claims for attorneys' fees heretofore incurred in the . . . litigation."

On December 8, 2015, a first amended judgment of nullity (AJON) was entered by Judge Schweitzer, memorializing the consent order.[4] The first AJON was a verbatim recitation of the consent order, incorporating in typed font all the handwritten provisions in the consent order.[5] Thereafter, over defendant's

---

[4] Although the order was entered on December 8, 2015, it is mistakenly dated October 8, 2015.

[5] In a companion order entered on December 8, 2015, Judge Schweitzer authorized Alexis's name change on her birth records so that "[Alexis] shall be considered the child's first name, [Begum d/o] shall function as a middle name and [Senthilkumar] shall function as a surname for purposes of New Jersey law[,]" with "d/o" meaning "daughter of." Anticipating plaintiff's departure

4

objection, plaintiff moved to compel defendant to cooperate and execute all necessary documents to obtain Singapore citizenship for Alexis. In a February 24, 2017 order, Judge David M. Ragonese determined that plaintiff "established [prima facie] that it [was] in [Alexis's] best interest to acquire citizenship in Singapore and have dual citizenship[,]" and a plenary hearing would be conducted wherein defendant would "bear the burden of establishing by a preponderance of the evidence that dual citizenship [was] not in [Alexis's] best interest."

Following the plenary hearing, on July 7, 2017, the judge granted plaintiff's motion and entered a second AJON modifying the first AJON.[6] Although the second AJON reiterated all the material provisions contained in the first AJON, the second AJON added a provision permitting plaintiff to apply for Singapore citizenship for Alexis, fortified the provisions prohibiting the parties "from commencing any custody and/or visitation/parenting time action or other modification of the [AJON] in any Islamic and/or Singapore civil

from the United States for immigration purposes, which departure had been delayed "due to the child custody dispute[,]" the order also authorized her attorney to "sign for the vital document changes" on plaintiff's behalf.

[6] Defendant represented himself at the plenary hearing and has continued to represent himself throughout the litigation, following the disqualification of his counsel, who was his wife, in a January 6, 2017 order.

A-0562-19T2

court[,]" and altered the provision pertaining to the domestication of the order in Singapore. Specifically, the second AJON required plaintiff to "domesticate and/or register . . . the [second AJON] in Singapore within sixty . . . days of the date of th[e o]rder." Within "forty-five . . . days of [p]laintiff providing such proof[,]" defendant was required to "cooperate with [p]laintiff by signing the documents required for [Alexis] to apply for Singapore citizenship."

In a comprehensive accompanying written decision, Judge Ragonese posited that "[t]he issue presented . . . [was] whether dual citizenship for [Alexis] violate[d] the bargained-for terms of the parties' [AJON], and if not, whether dual citizenship [was] in [Alexis's] best interests." After hearing testimony from plaintiff as well as a defense expert, the judge concluded that "[d]ual citizenship . . . does not violate the terms of the [AJON]" because the AJON required the retention of Alexis's United States citizenship but was "silent on the issue of Singapore citizenship, and defendant provided no evidence that Singapore citizenship [would] strip [Alexis] of her United States citizenship." Further, the judge determined it was in Alexis's "best interest to become a dual citizen" in order to enjoy the "generous government benefits" conferred upon Singapore citizens, including "medical, educational, and childcare subsidies."

A-0562-19T2

In rejecting defendant's contention that once Alexis became a Singapore citizen, "plaintiff intend[ed] to obstruct defendant's access to [Alexis,]" the judge found "plaintiff to be credible and sincere in her desire to abide by [the New Jersey court] orders" and acknowledged that "Singapore [was] a Hague Convention signatory."[7]   Nonetheless, because "regular contact between [Alexis] and defendant [was also] in the child's best interest[,]" the judge determined that "enforcement of defendant's parenting time must be a condition of the child's dual citizenship."  To that end, the judge modified the first AJON to "ensure that New Jersey remain[ed] the jurisdiction with sole and exclusive authority to resolve any future custody disputes between the parties" by requiring that plaintiff domesticate the second AJON in Singapore as a precondition to defendant being required to sign the documents for Alexis to apply for Singapore citizenship.

The judge explained:

---

[7] "The Hague Convention provides for a civil remedy to return a child to his or her 'habitual residence' after unlawful abduction or wrongful retention in a foreign nation.  However, a jurisdictional requisite is that the nations involved must be signatories to the Hague Convention[.]" Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003).  The AJON required plaintiff to "provide . . . defendant with at least fifteen . . . days . . . notice if she intend[ed] to travel to a non-Hague Convention jurisdiction."

A-0562-19T2

Singapore courts will recognize orders from other jurisdictions under certain circumstances. For instance, if a mirror order[8] is registered in Singapore, a Singapore court will recognize that order. The mirror order would equate to automatic reciprocity and would resolve jurisdictional disputes that may arise in Singapore. As such, the mirror order would act as a safeguard to the child's best interest because it would remove a Singapore court's discretionary determination to exercise jurisdiction while at the same time guaranteeing New Jersey's jurisdiction. On the other hand, if there is no mirror order, the child's rights and defendant's rights are prejudiced.

Neither party appealed nor moved for reconsideration of Judge Ragonese's July 7, 2017 order. However, the parties subsequently engaged in extensive motion practice, primarily involving enforcement motions related to domestication of the second AJON and obtaining Singapore citizenship for Alexis, as well as Alexis's custody, care, and parenting time. One such motion was filed by defendant in early 2019, as a result of which Judge Kurt Kramer conducted oral argument, with plaintiff appearing telephonically from Singapore. Following oral argument, on March 26, 2019, the judge entered an order, granting in part and denying in part, defendant's application to enforce

---

[8] In a footnote, Judge Ragonese explained that "[t]he term 'mirror order' refers to an order issued by one court containing the same terms as those in an order of another court[,]" and "[i]n this case, the registered order in Singapore would contain, or mirror, the [second AJON] issued in New Jersey."

various provisions of previously entered orders, and agreed to conduct a plenary hearing to resolve the remaining issues.

Specifically, the March 26, 2019 order granted "[d]efendant's request . . . requiring [p]laintiff to maintain a shared calendar" with Alexis's "school activities, extracurricular activities, . . . school calendar, . . . holiday schedule, and medical and dental appointments" as well as "cloud storage to keep the . . . documents." The order also granted "[d]efendant's request for [p]laintiff to provide [all] medical records for [Alexis,]" past and future, or face "sanctions of $100[] per week" for "[f]ailure to provide the documents or place them on cloud storage."[9] As to parenting time, the order permitted "[a]ny future parenting time" to "be unsupervised[,]" permitted defendant "to pick up [Alexis] from school upon prior written notice to [p]laintiff during his noticed visits to Singapore[,]" and permitted parenting time in Singapore from 7:00 a.m. to 7:00 p.m. on weekdays, and 10:00 a.m. to 7:00 p.m. on weekends, none of which had been previously delineated in the second AJON. On the other hand, based on defendant's failure to establish changed circumstances or provide substantive

_____

[9] Previously, in a May 12, 2017 order, Judge Ragonese had ordered plaintiff to "provide defendant with a complete copy [of Alexis's] medical records" as well as "proof of medical insurance" for Alexis "within forty-five . . . days of the date of th[e] order."

9

credible evidence, the order expressly denied defendant's request to "transfer[]" residential custody of [Alexis] to [him,]" denied his request for "a professional to assist . . . [him] with his daily [S]kype calls to [Alexis,]" denied "[his] request for the appointment of a [g]uardian [a]d [l]item[,]" and denied his request for an order "reinforc[ing] how [Alexis's] name should appear in all documents and records in Singapore."

Regarding the domestication of the second AJON ordered by Judge Ragonese, plaintiff's counsel explained to Judge Kramer that despite plaintiff's "good faith" efforts to domesticate the order, which efforts included "hir[ing] attorneys in Singapore" to "make the appropriate applications to the Singapore Family Court[,]" the Singapore court "refused to domesticate the order." According to counsel, while the Singapore Family Court "respect[ed] the jurisdiction of [the New Jersey] court[,]" a "mirror order" would have "result[ed] in an unenforceable order" because "the terminology used in Family Court proceedings in New Jersey and . . . Singapore," while "similar" in "concept[,]" have different "labels" and "nomenclature." Counsel expounded that although "the judge in Singapore" was willing to "interpret or translate" the New Jersey order "into terminology that correspond[ed] to what [was] used in the Singapore legal system[,]" in order to "create an enforceable order in Singapore[,]"

A-0562-19T2

defendant, who had "travelled to Singapore" and "hired his own attorneys" to participate in the Singapore Family Court proceedings, was "adamant that none of the language in the New Jersey court order[s] be changed in any way."

Based on counsel's unrebutted representations, Judge Kramer relaxed the requirement that plaintiff domesticate the order, and, instead, "authorized [defendant] to directly domesticate a mirrored copy" with plaintiff's cooperation. Judge Kramer further denied defendant's request to "void[]" the provisions of Judge Ragonese's July 7, 2017 order concerning Alexis's application for "Singapore citizenship," and required defendant to "execute the [c]onsent . . . to have [Alexis] obtain citizenship in Singapore within thirty . . . days after the [upcoming] plenary hearing or be subject to sanctions of $250[] per week" and payment of plaintiff's counsel fees "in the event" she moved for enforcement.

During the ensuing May 21, 2019 plenary hearing, Judge Kramer heard testimony from both defendant and plaintiff, again appearing telephonically from Singapore. After defendant rested, the judge dismissed defendant's request to hold plaintiff in contempt in connection with Alexis's name change, finding defendant failed to show "with any substantive credible evidence" how "plaintiff ha[d] not complied with the prior orders." Following the hearing, in an oral

decision placed on the record on June 4, 2019, and memorialized in a June 4, 2019 order, the judge granted in part, and denied in part, defendant's various requests for relief.

Pertinent to this appeal, regarding domestication of the second AJON, the judge found it was "undisputed that the initial efforts by the parties . . . were unsuccessful." However, based on defendant's testimony during the hearing that the failure was due to the parties' respective attorneys filing the application in the "[d]istrict [c]ourt" instead of the "high court" in Singapore, Judge Kramer permitted defendant "[sixty days]" to domesticate the order "at his own expense" and ordered plaintiff to cooperate with defendant's efforts.

Notwithstanding the foregoing, "consistent with . . . prior orders . . . that it [was] in the best interest of [Alexis] to obtain Singapore citizenship," the judge expressly ordered that:

> Unless shown that . . . [p]laintiff willfully prevented the domestication . . . , regardless of whether the domestication of any order is successful, [d]efendant shall execute the [consent form] . . . to have [Alexis] obtain citizenship in Singapore . . . or be subject to sanctions of $250[] per week . . . . Plaintiff shall be entitled to counsel fees in the event she is required to move to enforce this provision of the [c]ourt's order.

As to the timing, the judge explained that defendant had a total of 105 days from the date of the order to "execute the consent [form]" for Alexis's

Singapore citizenship application, allocating "[sixty] days to attempt to have [the order domesticated]" and "then . . . [forty-five] days thereafter." The judge also denied defendant's request to require plaintiff "to repay" $10,000 in "expenses regarding the mirror order" for "failure . . . to provide the proofs necessary to establish the claim."[10]

Regarding Alexis's medical records, the judge found that "[p]laintiff established at trial that she ha[d] made a good faith effort to obtain [Alexis's] records and that the process was continuing." Plaintiff had introduced requests and consents she executed and submitted on March 29, 2019, for the disclosure of Alexis's 2016 to 2019 medical records but was informed that it was a time consuming process. Thus, the judge denied defendant's request "to hold [p]laintiff . . . in contempt . . . for failure to provide [Alexis's] medical records" and continued plaintiff's "obligation" to provide "past medical records when obtained" and "[f]uture medical records . . . within fourteen . . . days of treatment." The judge noted that plaintiff would "be subject to sanctions" for non-compliance "upon further application to th[e c]ourt."

---

[10] Judge Ragonese's July 7, 2017 order had provided that plaintiff was entitled to reimbursement of "[fifty percent] of the costs incurred in domesticating the [s]econd [AJON]" upon submitting to defendant proof of domestication and associated costs.

A-0562-19T2

Additionally, Judge Kramer denied defendant's request for plaintiff to "share the expenses for parenting time and visitation" in Singapore, based on defendant's failure "to provide the proofs necessary to establish his . . . claim" or a "legal basis for the claim." Likewise, the judge denied without prejudice defendant's request for "immediate custody" of Alexis in the event plaintiff became "seriously ill and/or hospitalized or for any reason [could] not take care of [Alexis]." Because plaintiff resided with family members, including her sister and her mother who both cared for Alexis, the judge concluded defendant offered "no proofs" to justify such relief. Therefore, "[c]onsistent with prior orders," the judge determined that plaintiff would "remain the parent of primary residence" but, for the first time, ordered that defendant would be designated "the parent of alternat[e] residence."[11]

In denying defendant's request to travel with Alexis outside of Singapore, the judge stated:

> Defendant wants to take [Alexis] to India where his extended family including his father resides. Plaintiff has raised credible concerns that if [defendant]

---

[11] After plaintiff contested the judge's designation of defendant as the parent of alternate residence in his June 4, 2019 oral decision, the judge agreed to address the issue in a supplemental order after reviewing the record. Thereafter, the judge confirmed defendant's designation as the parent of alternate residence in a June 27, 2019 order.

takes [Alexis] to India to meet his family, he may not return the child to her.

. . . .

[A]ny request for parenting time outside of Singapore . . . [is] denied without prejudice. [Alexis] obtaining Singapore citizenship and a Singapore passport shall be a material change of circumstances [to] justify a modification of the terms of this paragraph of the order.

Addressing plaintiff's request for counsel fees, while the judge denied counsel fees incurred "in the Singapore litigation[,]" the judge granted a portion of the counsel fees incurred "in the New Jersey litigation[,]" subject to counsel's submission of an updated affidavit of services. In that regard, after applying the governing rules, the judge stated:

Here, neither party prevailed on all the material claims, but both parties did prevail on some of their material claims. Each party took position[s] that the [c]ourt found to be unreasonable, unnecessary or in bad faith. This includes, but is not limited to attempts by ... plaintiff to require that . . . defendant's parenting time be supervised in Singapore and defendant's request to modify the [c]ourt's prior findings that . . . [Alexis] should have dual citizenship.

The [c]ourt also finds that this round of litigation was initiated by . . . defendant and that . . . plaintiff is in financial need. For these reasons, plaintiff's request for counsel fees is granted in part.

15

Upon receipt of an updated affidavit, Judge Kramer awarded plaintiff $3377[12] in counsel fees in a June 27, 2019 order, payable in three equal monthly installment payments, beginning July 31, 2019.

Thereafter, defendant moved for reconsideration of the provisions of the June 4, 2019 order pertaining to travel outside of Singapore with Alexis, shared parenting time expenses, Alexis's name change, and counsel fees, which motion was denied by Judge Kramer in a September 20, 2019 order. During oral argument, the judge rejected defendant's contention that the expenses he incurred in traveling to Singapore to exercise his parenting time should be shared equally by plaintiff. The judge determined there was no "material change of circumstances" since "prior orders" were entered permitting plaintiff "to relocate to Singapore" with Alexis without the "imposition of cost[s]." Similarly, the judge found no "material change of circumstances" to allow Alexis to travel "to India or the [United States]" until she obtained "dual citizenship and a passport."[13]

---

[12] We round all monetary amounts to the nearest dollar.

[13] In that regard, defendant asserted that the prior orders had contemplated that Alexis would "travel to the United States . . . every year" during plaintiff's vacation. However, plaintiff countered that "[d]uring the custody litigation, it was repeatedly brought to the attention of [the court]" that the lengthy custody

A-0562-19T2

When questioned by Judge Kramer about the requirement that defendant domesticate the second AJON in Singapore and sign the consent form for Alexis to apply for Singapore citizenship, defendant admitted that he had both failed to domesticate the order and sign the consent form despite the passage of over 105 days since the June 4, 2019 order was entered. Plaintiff added that defendant had also failed to make any payments on the counsel fee award. In response, defendant explained that the domestication was "delay[ed,]" and Alexis's name on the consent form was incorrect, a claim that plaintiff disputed, but offered no explanation for his failure to pay the counsel fee award.

Based on defendant's failure to comply with the June 4, 2019 order by signing the consent form for Alexis to apply for Singapore citizenship, the judge enforced the order by imposing sanctions in the amount of $2250, payable "in three equal installments over the next [ninety] days." Based on defendant's failure to pay the counsel fee award ordered on June 27, 2019, the judge also ordered that "unless the counsel fee award . . . [was] paid within [thirty] days, sanctions of $250 a month [would] be imposed." Although the judge denied

---

battle jeopardized plaintiff's ability to return to the United States "for immigration reasons." In fact, when plaintiff "subsequently attempted to obtain a visa and a waiver[,]" she "was unable to do that" because a ten-year ban on her re-entry to the United States was imposed in 2016 as a result of her overstaying her visa litigating the case.

plaintiff's request for additional counsel fees incurred in the current motion, the judge indicated that counsel fees would be awarded in connection with any future enforcement application. This appeal followed.

On appeal, defendant argues the judge made changes to the second AJON without plaintiff establishing the "change of circumstances" required under Lepis v. Lepis, 83 N.J. 139 (1980). Specifically, defendant argues Judge Kramer erroneously prohibited him from traveling to India or the United States with Alexis; limited his exercise of parenting time to Singapore; failed to order the correction of Alexis's name on legal documents "in Singapore[;]" required him to pay counsel fees contrary to their prior agreement; excused plaintiff from her obligation to share his "extraordinary" parenting time travel expenses as well as the costs to domesticate the order; and required him to consent to Alexis obtaining Singapore citizenship regardless of whether domestication or a mirror order was obtained. Defendant asserts that to "protect[]" Alexis's United States citizenship, she should be allowed to obtain a "[permanent r]esident [c]ard in Singapore[,]" instead of forcing him to consent to her applying for Singapore citizenship without a mirror order.

Additionally, defendant argues the judge erred in not granting him custody prophylactically in the event plaintiff became "hospitalized" or "disabled and

unable to take care of Alexis." Defendant also complains that plaintiff's bad faith and continuous violations of various orders, particularly her failure to provide proof of health insurance and medical and school records, warrant a "custody change or a full trial" to determine Alexis's "[b]est [i]nterest." He adds that a guardian ad litem should be appointed to ensure plaintiff's compliance with the court orders.[14]

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv's Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate with respect to credibility determinations based on witness testimony, since the court has the ability to see and hear witnesses, and due to "the family courts' special jurisdiction and expertise in family matters." Id. at 412-13.

While we owe no special deference to the judge's legal conclusions, Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995), "'the factual

---

[14] Defendant also raises issues pertaining to a July 14, 2017 order, denying plaintiff's attorney's motion to be relieved as counsel. However, any appeal from that order is untimely, and we are without jurisdiction to hear an appeal brought beyond the date permitted by Rule 2:4-4(a). In re Hill, 241 N.J. Super. 367, 372 (App. Div. 1990).

findings and legal conclusions of the trial judge'" should be left undisturbed unless we are "'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). Thus, we will only reverse the trial court's decision when it is necessary to "'ensure that there is not a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'" Id. at 48 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

"A party seeking modification of a judgment, incorporating a [settlement agreement] regarding custody or visitation, must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (alteration in original) (quoting Abouzahr, 361 N.J. Super. at 152). The same standard applies whether the arrangement was "based on the parties' agreement or imposed by the court[.]" Ibid. See N.J.S.A. 9:2-4 (delineating best interest factors in custody determinations); see also Lepis, 83 N.J. at 157. A trial court's decision concerning custody or parenting time is left to the sound discretion of the trial

court and is reviewed for abuse of that discretion. See, e.g., Pascale v. Pascale, 140 N.J. 583, 611 (1995).

A party seeking reconsideration of an order must show that "1) the [c]ourt . . . expressed its decision based upon a palpably incorrect or irrational basis, or 2) . . . the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "Motions for reconsideration are governed by [Rule] 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. Ibid.

Likewise, counsel fee determinations rest within the trial judge's sound discretion. Williams v. Williams, 59 N.J. 229, 233 (1971). We will disturb a trial court's determination on counsel fees "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An "abuse of discretion only arises on demonstration of 'manifest error

or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Based on our careful review of the record, we discern no abuse of discretion warranting our intervention. Substantial, credible evidence in the record supports Judge Kramer's decisions, and we are satisfied there was no denial of justice under the law. The issues pertaining to domestication of the second AJON in Singapore and Alexis obtaining Singapore citizenship were the subject of two plenary hearings by two different judges. Judge Kramer's factual findings, to which we accord substantial deference, and legal conclusions in that regard are amply supported by the record and legally sustainable.

Given the nature of the parties' circumstances, plaintiff's compliance with her court ordered obligations, including providing defendant with Alexis's records, and defendant's exercise of his parenting time with Alexis are fluid situations subject to change depending on new circumstances that may justifiably prompt new applications. While Judge Kramer denied defendant's

serial applications pertaining to parenting time and related travel with Alexis, the denials were without prejudice and subject to defendant's cooperation with plaintiff's efforts to obtain "dual citizenship and a passport" for Alexis as directed in multiple orders.

Regarding the counsel fee award, contrary to defendant's contention, the second AJON only barred plaintiff's claim for counsel fees incurred up to the execution of the settlement agreement, not thereafter. Judge Kramer performed a thorough analysis of the RPC 1.5(a), Rule 4:42-9, and Rule 5:3-5(c) factors[15]

---

[15] Rule 5:3-5(c) provides that:

> the court should consider, in addition to the information required to be submitted pursuant to [Rule] 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Rule 4:42-9(b) requires that an application for counsel fees "be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." These factors relate to (1) "the time and labor required"; (2) whether the case will "preclude other employment" for the attorney; (3) "the fee customarily charged";

23

and correctly concluded they weighed in favor of a partial award of fees to plaintiff.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

(4) "the amount involved and the results obtained"; (5) any time limitations; (6) "the nature and length of the relationship with the client"; (7) "the experience, reputation, and ability of the lawyer or lawyers performing the services"; and (8) "whether the fee is fixed or contingent."  RPC 1.5(a).