**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0930-19

SMS FINANCIAL XXIX, LLC,

    Plaintiff-Respondent,

v.

TIMOTHY R. MEAKINS,

    Defendant/Third-Party
    Plaintiff-Appellant,

v.

SURETY TITLE, LLC, OLD
SMITHVILLE REALTY, INC.,
JAMES T. COX, ROBERT M.
SHAMBERG, and MARK R.
PURNELL,

    Third-Party Defendants-
    Respondents.

_____

Argued April 21, 2021 – Decided May 20, 2021

Before Judges Sumners, Geiger, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1728-18.

Timothy Meakins, appellant, argued the cause pro se.

Douglas J. Ferguson argued the cause for respondent SMS Financial XXIX, LLC (Eisenberg, Gold & Agrawal, PC, attorneys; Douglas J. Ferguson, on the brief).

Robert W. Williams argued the cause for respondent Surety Title, LLC (Mattleman, Weinroth & Miller, PC, attorneys; Robert W. Williams, on the brief).

Marc Friedman argued the cause for respondents Old Smithville Realty, Inc., James T. Cox, and Robert M. Shamberg.

PER CURIAM

Defendant Timothy R. Meakins (Timothy)[1] appeals from an August 2, 2019 order granting summary judgment to plaintiff SMS Financial XXIX, LLC (SMS) and third-party defendant Surety Title Company, LLC[2] (Surety) and dismissing all claims, counterclaims, crossclaims against SMS and Surety with prejudice, and a September 27, 2019 order denying reconsideration.  We affirm.

---

[1]  We identify defendant and his wife by their first names because they share the same surname.  We intend no disrespect in doing so.

[2]  Improperly pled as Surety Title, LLC.

A-0930-19

The following facts are derived from the summary judgment record, viewed in the light most favorable to Timothy, the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

On September 23, 2005, Timothy and his wife, Cheryl A. Meakins (Cheryl), borrowed the sum of $250,000 from The Bank. To secure that sum, Timothy and Cheryl executed and delivered to The Bank a line of credit promissory note (the Note), payable in monthly interest payments commencing October 23, 2005, with interest calculated at the variable rate of one percentage point over the Wall Street Journal prime rate. Principal was due upon demand. The Note was secured by a second-lien position mortgage on Timothy and Cheryl's residential property in Galloway Township (the Property).

The Note provided that if Timothy and Cheryl failed to make any installment payment when due or violated any other provision, the lender reserved the right to accelerate the remaining balance, including any unpaid interest, and to recover the attorneys' fees and court costs it incurred because of the default. The Note also contained a cross-default provision, which stated: "Any event of default under any loan due and owing to Lender by Borrower, at any time, shall constitute an event of default under all loans due and owing to Lender by Borrower."

A-0930-19

On November 23, 2007, Timothy and Cheryl executed and delivered to The Bank a "Note Re-affirmation Agreement," which reduced the interest rate on the Note to Wall Street Journal prime rate. The Bank subsequently became known as Fulton Bank.

In 2010, Timothy and Cheryl defaulted on the prior mortgage held by Wells Fargo, which resulted in Wells Fargo filing a mortgage foreclosure action.[3] To avoid foreclosure, Timothy and Cheryl decided to proceed with a short sale of the Property after their divorce in December 2012. Timothy retained third-party defendant Mark R. Purnell, a real estate agent, to assist in the short sale.

On June 14, 2013, SMS purchased the Note, Reaffirmation Agreement and related loan documents from Fulton Bank by way of a Loan Purchase Agreement and Bill of Sale and received an assignment of the mortgage in July 2013. On or about July 8, 2014, SMS sent a letter to Purnell, advising him that SMS would agree to accept $38,446.36 in proceeds from the short sale of the Property to release its junior lien. The letter stated in part that "SMS agrees to

---

[3] In May 2011, Cheryl filed a Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey. In February 2012, the bankruptcy was converted to Chapter 7. A discharge of debtor was issued to Cheryl by the Bankruptcy Court on May 25, 2012.

A-0930-19

accept $38,446.36 in proceeds to release the lien on the property and satisfy our mortgage of record." On or about January 12, 2015, SMS sent a second letter to Purnell advising him that SMS would agree to accept the sum of $30,000 in proceeds from the sale of the Property to release its junior lien. On or about January 29, 2015, SMS sent a third letter reiterating the same offer. Thereafter, Wells Fargo agreed to the short sale, and the terms of Timothy and Cheryl's agreement with Wells Fargo were memorialized on January 25, 2015.

The Property was sold for $390,000. The buyer obtained a title insurance policy through Surety. The closing took place on February 9, 2015. Wells Fargo received $271,822.27 from the proceeds. SMS received $30,000, applied it to the loan balance, and thereafter released and discharged its mortgage on the Property. Timothy made no subsequent payments on the loan account, which fell into default on February 23, 2015. As a result, SMS accelerated all remaining payments and declared the principal balance and all accrued interest on the Note and Reaffirmation Agreement to be due and payable.

On July 19, 2018, SMS filed this breach of contract and unjust enrichment action against Timothy and Cheryl. Four days later, SMS filed an amended complaint removing Cheryl as a defendant.

5

On August 24, 2018, Timothy unsuccessfully moved to dismiss the amended complaint. Thereafter, Timothy filed an answer and third-party complaint. The third-party complaint named Surety, Old Smithville Realty, Inc. (Smithville), Robert M. Shamberg, Mark R. Purnell, and James T. Cox as third-party defendants and alleged breach of contract, negligence, and other causes of action.

On November 12, 2018, Surety moved to dismiss the third-party complaint. The judge dismissed Timothy's negligence claims as being time-barred but allowed him to file an amended pleading setting forth specific allegations as to each defendant.

In his amended third-party complaint, Timothy alleged causes of action for indemnity, subrogation, breach of duty of care, and breach of contract. In turn, Surety and Smithville filed answers with crossclaims.

On March 8, 2019, Surety moved for summary judgment. In the meantime, Timothy moved to vacate SMS's release of mortgage, to compel responses to his request for production of documents, and to extend discovery. SMS cross-moved for summary judgment. SMS's manager, Jonathan Hoffer, certified that he never indicated SMS would release Timothy from his obligation under the Note and Reaffirmation Agreement.

6

On August 2, 2019, Judge John C. Porto heard oral argument and issued an order and oral decision granting summary judgment in favor of both SMS and Surety. The judge also dismissed all claims against SMS and Surety with prejudice. However, Timothy's third-party claims for indemnity and breach of contract against Smithville, Shamberg, Cox, and Purnell remained open. The court also permitted SMS to seek attorney's fees and costs within twenty days.

The court found that Timothy and Cheryl were the record owners of the Property. The court noted that they encumbered the property with two mortgages: Wells Fargo held the first mortgage, which was recorded in 1998, and SMS held the second mortgage, which was recorded in 2005.

The judge found that Timothy and Cheryl executed the $250,000 demand Note with The Bank on September 23, 2005, and that the Note required regular monthly payments of all accrued unpaid interest commencing October 23, 2005. The Note provided that failure to make a required payment when due or failure to perform any other term obligation, covenant, or condition allowed the lender to accelerate the entire loan balance and to recover attorney's fees and costs. The note was secured by a second mortgage on the Property. The 2007 Reaffirmation Agreement reduced the interest rate on the account.

A-0930-19

The judge found that Timothy and Cheryl defaulted on the Wells Fargo mortgage in 2010, which led to the foreclosure action filed by Wells Fargo. After Cheryl filed bankruptcy, Timothy and Cheryl decided to proceed with a short sale on the Property.

The judge noted that the Note and related loan documents were purchased by SMS through a Loan Purchase Agreement dated June 14, 2013. SMS ultimately agreed to accept $30,000 from the short sale proceeds to release its junior lien on the Property. On January 25, 2015, Timothy, Cheryl, and Wells Fargo agreed to the short sale.

The judge found that SMS never indicated it would release Timothy from his obligation under the Note and Reaffirmation Agreement and did not do so. The judge explained that after the Property was purchased for $390,000, the buyer obtained an owner's title insurance policy through Surety. Following the closing in February 2015, Wells Fargo received $271,822.27 from the short sale proceeds, and SMS received $30,000. SMS applied the $30,000 that it received from Surety to the loan balance and released and discharged the mortgage on the Property.

The judge found that after SMS received the proceeds from the short sale in 2015, Timothy failed to make any payments on the Note and, thereby,

"breached the terms and conditions of the Promissory Note and Reaffirmation Agreement." SMS then exercised its right to accelerate because of the default and declared the entire principal and interest balance of the Note and Reaffirmation Agreement to be due and payable by reason of Timothy's default. Notwithstanding the Note's cross-default clause, SMS's claim was not time-barred because Timothy defaulted in 2015, not in 2000 as suggested by Timothy.

The judge found that as of July 18, 2018, the balance due on the Note was "$443,572.84, together with continuing per diem interest since the date, late fees, attorney's fees and cost of action." The judge noted that SMS released and discharged the mortgage on the property on November 20, 2018. The judge determined "that the release did not affect the underlying Promissory Note and Reaffirmation Agreement."

The judge clarified that Surety and Timothy never entered into a contract, written or otherwise, or indemnification agreement and that Timothy never retained Surety to negotiate the short sale of the Property. He added that Surety did not charge Timothy a fee for negotiating a short sale or make any representations to Timothy regarding personal liability under the Note. The judge also noted that Purnell did not work for Surety.

A-0930-19

The judge further noted it was undisputed that Timothy and Cheryl executed the Note, Reaffirmation Agreement, and mortgage. It was also undisputed that no additional payments were made to SMS after the February 23, 2015 payment from the short sale.

The judge concluded that SMS's acceptance of the $30,000 to release the lien upon the Property was not considered payment unless all parties intended the payment to be accepted in complete satisfaction of the outstanding debt. The judge pointed to the Release of Mortgage, which "specifically noted that SMS does hereby release and discharge the mortgage without any effect to the underlying Promissory Note which remains unpaid." Therefore, "the release of [the] lien did not discharge the unpaid obligation."

As to Timothy's common law indemnity claim against Surety, the judge concluded that plaintiff's action involved a breach of contract claim for defaulting on a Promissory Note—not a claim for negligence or general tort action. The judge explained that even if indemnification applied, Timothy was the liable party because he failed to make payments on the Note. The judge noted that Timothy and Cheryl executed the Note well before Surety became involved and that the Note was not affected by the release of the mortgage flowing from the short sale of the Property in 2015. He further explained that

10

although Timothy may have proceeded with the short sale without "full comprehension of the import of the transaction," that did not make Surety—the closing agent for the short sale—liable for Timothy's default on the Note. The court emphasized that Surety discharged its obligation at the settlement table upon disbursing the funds from the short sale.

The judge also rejected Timothy's claims that punitive damages against Surety were warranted due to its failure to comply with industry standards. The judge found that Timothy "provided no competent evidence . . . to establish by clear and convincing evidence [that] Surety wantonly and willfully disregarded or harmed [Timothy] by [its] acts or omissions. Moreover, . . . as this claim involves an underlying breach of contract, punitive damages are generally not recoverable."

The judge also found that Timothy had no right to subrogation because "no agreement, written or otherwise, existed between [Timothy] and Surety, as insurer and insured." Instead, the buyer had an agreement with Surety and that agreement did not extend to Timothy.

As to Timothy's claim against Surety for breach of duty of care, the judge found it was time-barred by the two-year statute of limitations applicable to

11

negligence claims, noting that the short sale took place in 2015 and Timothy did not file his claim until February 19, 2019.

As to Timothy's breach of contract claim against Surety, the judge found that Timothy had no written contract with Surety, and any alleged oral contract would be unenforceable under the statute of frauds. Moreover, the purpose of the title policy issued by Surety was to provide clear title to the buyer, not Timothy or Cheryl.

The judge also rejected Surety and Timothy's claim for attorney's fees and costs, concluding there was no contractual or legal basis for their claims. On the other hand, the judge found SMS was entitled to an award of attorney's fees and costs pursuant to the terms of the Note.

Thereafter, Timothy moved for reconsideration. SMS applied for an award of counsel fees and costs and for entry of judgment. On September 27, 2019, the judge denied reconsideration, granted SMS's motion for attorney's fees, and granted judgment to SMS in the amount of $458,103.57 plus interest.

The judge found that he neither expressed his decision on a palpably incorrect, irrational basis nor failed to consider or appreciate the significance of probative competent evidence. The judge noted that he made substantial findings of material facts on the record, which were supported by documents

12

that revealed the existence of the Promissory Note and Reaffirmation Agreement and clearly expressed the intent of the short sale. The judge reiterated that the $30,000 in proceeds from the short sale, which was paid to SMS, did not discharge the remaining balance of the Note. The judge again rejected Timothy's argument that the statute of limitations for collecting the note ran in 2016. The court, instead, found that the cause of action accrued in 2015 when Timothy defaulted on the Note and Reaffirmation Agreement by failing to make payments.

On October 15, 2019, Smithville, Shamberg, and Cox moved for summary judgment. On December 6, 2019, the judge granted their motion.

In the interim, on October 23, 2019, while Smithville, Shamberg, and Cox's summary judgment motion was still pending, Timothy filed a notice of appeal of the August 2, 2019 and the September 27, 2019 orders.

Timothy subsequently moved to voluntarily dismiss the complaint against Purnell. On January 22, 2020, the judge dismissed the remaining counts against Purnell.

Timothy raises the following points for our consideration:

POINT I

THE TRIAL COURT ERRED IN GRANTING SMS'S CROSS MOTION FOR SUMMARY JUDGMENT AS

13                                                                A-0930-19

THEIR COMPLAINT WAS FILED AFTER THE [NEW JERSEY] STATUTE OF LIMITATION LAPSED.

POINT II

THE TRIAL COURT ERRED IN GRANTING SURETY TITLE['S] MOTION FOR SUMMARY JUDGMENT BECAUSE ALL PAPERS ON FILE WERE NOT AND MUST BE CONSIDERED, AS THERE WERE NUMERIOUS GENUINE AND MATERIAL ISSUES IN DISPUTE.

POINT III

THE TRIAL COURT ERRED IN GRANTING SMITHVILLE REALTY INC[.]'S MOTION FOR SUMMARY JUDGMENT BECAUSE ALL PAPERS AND TESTIMONY ON FILE WERE NOT AND MUST BE CONSIDERED, AS THERE WERE NUMEROUS GENUINE AND MATERIAL ISSUES IN DISPUTE.

"In reviewing a grant of summary judgment, 'we apply the same standard governing the trial court—we view the evidence in the light most favorable to the non-moving party.'" Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 350 (2016) (quoting Qian v. Toll Bros. Inc., 224 N.J. 124, 134-35 (2015)). We consider the factual record and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether the moving party was entitled to judgment as a matter of law. IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill v. Guardian Life Ins. Co.

of Am., 142 N.J. 520, 540 (1995)).  We accord no special deference to a trial judge's assessment of the documentary record as the decision to grant or withhold summary judgment does not hinge upon a judge's determinations of the credibility of testimony rendered in court but instead amounts to a ruling on a question of law.  See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We find no merit in Timothy's arguments and affirm substantially for the reasons expressed by Judge Porto in his comprehensive oral decisions.  Judge Porto's findings of fact are amply supported by the record, and his legal conclusions are consonant with the applicable legal principles.  We discern no error or abuse of discretion.  We add the following comments.

Timothy's argument that acceptance of the $30,000 completely satisfied the Note is meritless.  His reliance on N.J.S.A. 46:18-11.7 is misplaced. N.J.S.A. 46:18-11.7 applies when the mortgage is paid in full, not under the facts of this case, which did not involve payment in full.

The release of the mortgage in consideration for the $30,000 partial payment does not bar action to enforce the Note.  See Cellized Floors, Inc. v. Glen Falls Indem. Co., 9 N.J. Misc. 1111, 1113 (Sup. Ct. 1931) (rejecting the defendant's claim that receipt of a post-dated check, which was subsequently

refused by the bank for lack of sufficient funds, coupled with a release of the plaintiff's liens, estopped the plaintiff from suing on the bond); Freeholders of Middlesex v. Thomas & Martin, 20 N.J. Eq. 39, 41 (N.J. Ch. 1869) (holding that payment received by either a debtor or a third party will not be regarded as a payment of a pre-existing debt in the absence of an express agreement to that effect).  Indeed, SMS never indicated it would release Timothy from his obligation under the Note and Reaffirmation Agreement.  In fact, the letters sent to Purnell noted that SMS would accept partial payment from the short sale proceeds "to release the lien on the property and satisfy our mortgage of record."

Judge Porto correctly determined that SMS's acceptance of the $30,000 short sale payment was not considered full satisfaction of the Note because it was not intended to be accepted as complete satisfaction of the outstanding debt. On the contrary, the $30,000 payment was accepted in consideration for releasing the mortgage lien, not as satisfaction of the balance due on the Note. See Cellized Floors, 9 N.J. Misc. at 1115 ("The mere giving of a release of liens upon the lands and building would not of itself be such an act as would discharge the defendant company, particularly where it had every opportunity to inquire as to the nature of the instrument given.").

16

Timothy's argument that SMS's claims are time-barred is equally without merit. The last payment SMS received was the $30,000 payment from the short sale on February 9, 2015. Timothy and Cheryl defaulted in their payments to SMS by failing to remit the monthly interest payment that fell due on February 23, 2015 and each month thereafter. Actions to enforce a demand promissory note must be filed within six years after the demand. N.J.S.A. 12A:3-118(b). SMS declared the loan in default and demanded payment in full in 2015. It filed its complaint on July 19, 2018, well within the applicable six-year statute of limitations.

Timothy argues that his default of the first mortgage account in 2010 triggered the cross-default clause in the Note, thereby commencing the six-year limitations period. We disagree. The Note expressly states, "Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them." SMS did not elect to accelerate the balance due on the Note or demand payment in full because of Timothy and Cheryl's default on the first mortgage account.

Timothy further argues that the judge erred in granting summary judgment to Surety, dismissing his claims of indemnity, subrogation, breach of duty of care, and breach of contract. We are unpersuaded. Based on findings that were

17

fully supported by the motion record, the judge properly concluded that each of these claims are meritless. Moreover, as correctly determined by the judge, Timothy's breach of duty of care claim is time-barred, and his breach of contract claim fails because he never entered into a contract with Surety—only the buyer contracted with Surety. Similarly, there is no factual or legal basis for subrogation or indemnity.

Timothy also argues that the judge erred in denying his motion for reconsideration because the judge expressed his decision on a palpably incorrect, irrational basis and failed to consider evidence when it decided SMS and Surety's motions for summary judgment. We disagree.

"Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration is only granted under narrow circumstances. Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).

> Reconsideration should be used only for those cases in which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to

A-0930-19

appreciate the significance of probative, competent evidence.

[Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

"[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, 440 N.J. Super. at 382 (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). An abuse of discretion occurs when a decision is rendered "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

The judge's well-reasoned August 2, 2019 decision properly considered the entire motion record and included substantial findings of material facts and legal analysis. The judge did not abuse its discretion in denying reconsideration.

Finally, Timothy argues that the trial court erred in granting Smithville, Shamberg, and Cox's motion for summary judgment. However, his amended notice of appeal and case information statement only listed the August 2, 2019 order, which granted SMS and Surety's motions for summary judgment, and the September 27, 2019 order, which denied his motion for reconsideration. The trial court heard oral argument and granted summary judgment to Smithville,

A-0930-19

Shamberg, and Cox on December 6, 2019. Timothy did not list the December 6, 2019 order in his notice of appeal or case information statement. In fact, Timothy filed his amended notice of appeal before the judge even issued the December 6, 2019 order.

Rule 2:5-1(e)(3)(i) requires the notice of appeal in civil actions to "designate the judgment, decision, action or rule, or part thereof appealed from . . . ." The Appellate Division considers only those orders from which an appeal is taken. Fusco, 349 N.J. Super. at 460-62. Therefore, this court will only address the August 2, 2019 and September 27, 2019 orders. See 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 473-74 (App. Div. 2006) (declining to review orders dismissing the defendant's affirmative claims because they were not included in her notice of appeal); Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (declining to consider an order not listed in the notice of appeal); Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1(e)(1) (2021) ("it is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review"). We decline to consider the December 6, 2019 order that granted summary judgment to Smithville, Shamberg, and Cox.

Timothy's remaining arguments are without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0930-19