NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2287-13T3

THE PITNEY BOWES BANK, INC.,

    Plaintiff-Respondent,

v.

ABC CAGING FULFILLMENT,

    Defendant-Appellant.

APPROVED FOR PUBLICATION

May 8, 2015

APPELLATE DIVISION

_____

Argued December 16, 2014 — Decided May 8, 2015

Before Judges Messano, Ostrer and Hayden.[1]

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-5518-11.

Jeff Thakker argued the cause for appellant.

Nicola G. Suglia argued the cause for respondent (Fleischer, Fleischer & Suglia, attorneys; Jaclyn Scarduzio Dopke, on the brief).

The opinion of the court was delivered by

HAYDEN, J.A.D.

In this case we consider the effect of N.J.S.A. 34:11-31 and -32 on a levy, pursuant to a writ of execution, of a debtor's bank

---

[1] Judge Messano did not participate in oral argument.  He joins the opinion with counsel's consent.  See R. 2:13-2(b).

account, which purportedly was used to pay employees' wages. Defendant ABC Caging Fulfillment (ABC) appeals from the December 6, 2013 Law Division order granting plaintiff Pitney Bowes Bank's (Pitney Bowes) motion for reconsideration. Having considered ABC's contentions in light of the record and applicable law, we affirm in part, reverse in part, and remand for further proceedings.

We discern the following facts from the record. This dispute arises out of a civil complaint filed by Pitney Bowes, which claimed that ABC had breached a purchase agreement. In its complaint, Pitney Bowes alleged that ABC failed to make the required payments and, thus, defaulted under the terms of the agreement. The trial court struck ABC's answer with prejudice due to ABC's failure to respond to discovery requests. Thereafter, on July 12, 2013, the trial court entered a default judgment in favor of Pitney Bowes in the amount of $69,315.59.

On September 6, 2013, the Ocean County Sheriff levied ABC's Shore Community Bank account containing $30,455 pursuant to a writ of execution. The Sheriff sent ABC a notice of the levy on the same day. On September 12, 2013, Pitney Bowes moved for an order requiring the bank to turn over the levied funds. In its opposition, ABC argued that the funds in the bank account were exempt as unpaid wages under N.J.S.A. 34:11-31 and -32.

2

ABC's president, Patsy O'Brien, certified that the levied account was ABC's "payroll account" and its contents were used to pay employees' wages. O'Brien stated that approximately $10,000 was due and owing to employees at the time of the levy. As a result of the levy freezing the payroll funds, O'Brien paid the employees' wages using her own personal funds. During the month that Pitney Bowes's motion for turnover was pending, O'Brien continued to pay the employees' wages from other funds.

Pitney Bowes responded that the levied funds were not exempt under N.J.S.A. 34:11-31 and -32. In particular, Pitney Bowes contended that the statutes applied to wages "due and owing" and since ABC's employees had been paid after the levy, the statutes did not apply. On October 11, 2013, the trial court denied Pitney Bowes's motion, without oral argument, for "the reasons set forth in the opposition."

Pitney Bowes filed a timely motion for reconsideration, arguing that the trial court "may not have been in receipt of and/or considered [its] reply to [ABC's] late opposition at the time of the decision." On December 6, 2013, the trial judge, after hearing oral argument, granted the motion. In determining that reconsideration was appropriate, the trial judge explained that he had "taken another look" at the matter as he now "had the benefit of all the papers[.]" The trial judge found that N.J.S.A.

3

34:11-31 and -32 did not apply to "wages owed after the date of the levy" and that while O'Brien had to advance monies to pay employee wages, that fact "[did not] qualify as an exemption" under the statutes. Instead, he opined, it made her a creditor of ABC. This appeal followed.

On appeal, ABC first argues that the trial court abused its discretion in granting the motion for reconsideration as there were no new facts or law presented to the court. Rather, ABC contends that the parties fully briefed, and the trial court fully adjudicated, the issues when it denied Pitney Bowes's original motion.

Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court. See Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div.), certif. denied, 195 N.J. 521 (2008) (internal citations omitted). Reconsideration should be used only where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

4

Thus, a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

We accord substantial deference to the trial court's findings of fact provided that they are "supported by adequate, substantial and credible evidence[,]" and also give deference to the trial court's conclusions and "discretionary determinations that flow from them." Cosme v. Borough of East Newark Twp. Comm., 304 N.J. Super. 191, 202 (App. Div. 1997), certif. denied, 156 N.J. 381 (1998) (internal quotation marks and citations omitted). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995).

Here, the trial court's decision to entertain defendant's application was certainly "within the scope of [its] discretion." See Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super.

5

141, 146 (App. Div. 2007). Even assuming that the trial court had the benefit of all of the papers, the court's choice to undertake a second review of the evidence and facts presented was well within its discretionary authority. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div.), certif. denied, 174 N.J. 544 (2002). Given the little used statutes involved as well as the lack of judicial precedent or legislative history discussing the scope of N.J.S.A. 34:11-31 and -32, the trial court's choice to consider his decision again was reasonable. Nonetheless, as explained below, we conclude it was a mistaken exercise of discretion to grant the reconsideration motion in full.

ABC further contends that the trial court erred in finding that N.J.S.A. 34:11-31 and -32 did not apply to its levied payroll account. Specifically, ABC contends that the wages due and owing on September 6, 2013, the date of the levy, were exempt under N.J.S.A. 34:11-31, and that those wages which accrued between the date of the levy and when the trial court decided Pitney Bowes's turnover motion were also exempt under N.J.S.A. 34:11-32. Based upon our scrutiny of these statutes, we agree with ABC's position with respect to those wages that were due on September 6, 2013, but reject ABC's contention that the wages due after the levy was executed were also exempt.

6

N.J.S.A. 34:11-31 and -32 sets forth the priority of employees' wages against other creditors of the employer.[2]  See Maureen S. Binetti & Stephanie D. Gironda, New Jersey Wage Payment Law § 16.07 (2014).  N.J.S.A. 34:11-31 provides:

> No personal property, being in this state and belonging to any person, corporation or manufacturer, shall be liable to be removed by virtue of any execution, attachment or other process, unless the party, by whom or at whose suit such process was issued or sued out, shall first pay or cause to be paid to the operatives, mechanics and other employees of such person, manufacturer or corporation the wages then owing from such person, manufacturer or corporation.  The wages required to be paid as aforesaid shall not exceed two months' wages, and, if the wages due and owing as aforesaid shall exceed two months' wages, the party at whose suit such process is sued out may, upon paying or causing to be paid to such employees two months' wages, proceed to execute his process . . . .

> [Ibid. (emphasis added).]

Additionally, N.J.S.A. 34:11-32 provides that property removed by the sheriff without employees' wages being paid may not be sold "until the plaintiff or party causing the levy shall . . . pay to such employees such wages . . . [then] owing[.]"  If employees are not paid the wages due and owed to them, they must

---

[2] The law was passed in 1877 and only amended in 1896.  L. 1896, c. 2 § 1, 53.  No legislative history is available.

notify the officer of their claim in order to stop the sale of the property within ten days of the property being removed. Ibid.

While there is a dearth of legal precedent concerning these timeworn statutes, "[t]here is no question about the general primacy of the wage claimant's position under New Jersey law." Robison-Anton Textile Co. v. Embroidery Prods. Corp., 97 N.J. Super. 507, 508 (App. Div. 1967) (citing N.J.S.A. 34:11-31 and -33). It is clear that the purpose of these statutes was to ensure that employee wage claims take priority over other creditors. See In re Holly Knitwear, Inc., 115 N.J. Super. 564, 579 (Cty. Ct. 1971), modified on other grounds, 140 N.J. Super. 375 (App. Div. 1976); see also State v. Rosen, 40 N.J. Super. 363, 369 (Law Div. 1956) ("[I]t was the intent [of the Legislature] to make wages earned by employees a paramount claim to all others upon the assets of the employer."), rev'd on other grounds, Dep't of Labor & Indus. v. Rosen, 44 N.J. Super. 42 (App. Div. 1957).

In interpreting a statute, "[w]ell-known principles of statutory construction guide [our] analysis[.]" State v. Hudson, 209 N.J. 513, 529 (2012). "The overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent." Ibid. To that end, we look to the plain language of the statute as the best indicator of the intent of the Legislature. Ibid. "If the plain language leads to a clear and

8

unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007); see also N.J.S.A. 1:1-1 (A statute's "words and phrases shall be read and construed with their context, and shall . . . be given their generally accepted meaning, according to the approved usage of the language."). When interpreting a statute that is part of a larger framework, the statute should be read in connection with the other parts to give meaning to the entire legislative scheme. See Rosen, supra, 40 N.J. Super. at 369; see also Carlson v. City of Hackensack, 410 N.J. Super. 491, 497 (App. Div. 2009).

Our function is not "to rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language." Borough of Glassboro v. Fraternal Order of Police, Lodge No. 108, 197 N.J. 1, 11 (2008) (internal quotation marks and citations omitted). Further, courts may not "read into a statute words that were not placed there by the Legislature." State v. Smith, 197 N.J. 325, 332 (2009).

Applying these principles, we conclude that N.J.S.A. 34:11-31 unambiguously requires that wages "then owing" to employees at the time of the levy must be paid before the creditor for whom the sheriff levied the funds, in this case, Pitney Bowes. When a levy

9

is made on a bank account, "the funds levied are technically no longer the bank's or debtor's to control." Sylvan Equip. Rental Corp. v. C. Washington & Son, Inc., 292 N.J. Super. 568, 574 (Law Div. 1995). A bank levy is "fixed in time as of the date the sheriff served the writ on [the bank.]" T & C Leasing, Inc. v. Wachovia Bank, N.A., 421 N.J. Super. 221, 230 (App. Div. 2011). Thus, to the extent that the funds in the account represented employee wages then due and owing, they were exempt from the levy. In our view it is of no moment that after the levy, ABC, unable to pay their employees' wages due to the freezing of exempt funds, obtained the money elsewhere and paid the employees. ABC was under a legal obligation to pay its employees at least twice each month. N.J.S.A. 34:11-4.2.

On the other hand, ABC's argument that the wages that became due and owing after the levy were exempt under N.J.S.A. 34:11-32 is not supported by the statute. N.J.S.A. 34:11-32 prohibits the sale of property pursuant to a writ before the wages due at the time of the removal are paid. ABC incorrectly contends that until the levied funds were turned over to Pitney Bowes, any wages that accrued became exempt. This argument ignores the reality that the funds were removed on the day of the levy and the wages due and owing were fixed by the date of the removal. See T & C Leasing, supra, 421 N.J. Super. at 230.

10

Notwithstanding our conclusion that the funds representing employee wages due and owing on September 6, 2013 were exempt from the levy, we conclude that a remand to the trial court is necessary to determine the exact amount of wages due on the date of the levy. While the wage amount was discussed in ABC's papers, the figures are contradictory and unsubstantiated.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11