**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2123-15T1

GARY S. GEORGE,

      Plaintiff-Appellant,

v.

LIBERTY INSURANCE
CORPORATION,

      Defendant-Respondent.

_____

Argued September 20, 2017 - Decided January 17, 2019

Before Judges Fuentes, Koblitz and Suter.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7152-13.

Mario Apuzzo argued the cause for appellant.

Sarabraj S. Thapar argued the cause for respondent (Law Offices of Viscomi & Lyons, attorneys; Patricia R. Lyons, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiff Gary S. George was involved in an automobile accident with an underinsured motorist in which he injured his shoulder, knees, and hands. After settling with the tortfeasor, plaintiff filed an underinsured motorist (UIM) action against his automobile insurance carrier, defendant Liberty Insurance Corporation. The parties in this UIM action stipulated that the tortfeasor was 100% liable. The question of damages was presented to a civil jury. Plaintiff's auto policy contained a "limitation on lawsuit" option, commonly referred to as the verbal threshold. This required plaintiff to prove he sustained a "permanent injury," as defined in N.J.S.A. 39:6A-8(a), which was proximately caused by this accident. After a three-day trial, the jury unanimously found plaintiff did not suffer a permanent injury proximately related to the accident and returned a no cause verdict in favor of defendant.

Plaintiff filed a motion for a new trial pursuant to Rule 4:49-1, arguing the verdict was against the weight of the evidence because defendant's expert conceded plaintiff suffered a permanent injury proximately caused by this auto accident. The trial judge denied plaintiff's motion and expressly found defendant's expert witness did not concede this material issue. The trial judge also denied plaintiff's motion for reconsideration pursuant to Rule 4:49-2. In

this appeal, plaintiff argues the trial judge erred in denying his motion for a new trial. We disagree and affirm.

I

The automobile accident occurred at approximately 6:45 a.m. on February 1, 2008. At the time, plaintiff was fifty-three years old and worked as a self-employed barber. The trial began on September 21, 2015. When the trial judge asked counsel: "What took so long?" Defense counsel responded: "Well, it's a UIM matter so there's a six-year statute [of limitations]."

Plaintiff was the only witness who testified live before the jury. The two medical witnesses called by the parties testified via de bene esse depositions. See R. 4:14-9. Plaintiff testified that while on route to his barbershop, the tortfeasor "made an abrupt left turn into [his] path. . . [.]" Although he forcefully applied his brake, the two vehicles collided. Plaintiff testified that he was able to unbuckle his seatbelt, step out of his car, and sit on "the grass divider." The only injury he noticed immediately after the accident was that his knees were "bleeding" from hitting the dashboard of his car.

At about 8:30 a.m. that same day, plaintiff drove to St. Peters Hospital complaining of pain in his upper neck, shoulders, knees, lower back, and slight irritation in his hip. The medical staff who examined him also took x-rays of

his body. Plaintiff testified he was given a "band-aid and an ice pack" for his knee, and a prescription for an anti-inflammatory medication. He testified this treatment "was very helpful" and relieved "a lot of the pain." Plaintiff also testified that he was still in pain after he was released from the hospital.

On February 20, 2008 plaintiff consulted Dr. Timothy M. Hosea, an orthopedic surgeon with a specialty in sports medicine. Plaintiff complained to Dr. Hosea of pain in his ankles, knees, shoulders, left hand, elbow, and entire back. According to Dr. Hosea, plaintiff complained of "abrasions of his left hand and a contusion on his left elbow." Dr. Hosea also noted plaintiff had "superficial abrasions" on the right knee. This was the same knee plaintiff claimed he hit against the dashboard of the car twenty days earlier. Dr. Hosea also found that plaintiff's left hand and elbow retained their "full range of motion without any problems," his left knee was "ligamentously stable meaning . . . no ligamentous injury," and his knees showed no sign of nerve damage.

When asked if he reached a diagnosis, Dr. Hosea stated:

> He had a right medial meniscus tear in addition to the right patellofemoral chondromalacia and a contusion. He had a contusion on his right shoulder with what we call mal impingement syndrome or also known as site rotator cuff tendonitis and he had a contusion of his left hand.
>
> Q. Okay. Did you prescribe a treatment plan for him?

A. We gave him a prescription for Naprosyn. We recommended he obtain an MRI [magnetic resonance imaging study] of his right knee to rule out possible meniscus tear and I . . . sen[t] him for physical therapy.

Q. Okay. Do you have a prognosis at this point?

A. Well, we were just initiating treatment and I was hoping he would do fine.

Dr. Hosea was deposed on May 28, 2015.

Plaintiff testified he had a total of six MRI studies of his knees and shoulders during the time he was treated by Dr. Hosea. Ironically, Dr. Hosea testified that he did not rely on the MRI studies to support his findings and diagnosis that plaintiff suffered from a degeneration of his knees.

Q. You did not review any MRIs or any x-rays of Mr. George's knees prior to this accident that indicated there were any, but you don't know what the condition - -

A. Correct.

Q. - - of his knees were - -

A. Correct

Q. - - prior to this accident?

A. You're right.

Q. And basically your diagnosis is . . . based partly on Mr. George's testimony that he was involved in a motor vehicle accident?

A. Correct.

Dr. Hosea repeatedly ordered physical therapy as a mode of treatment for plaintiff's shoulder pain. Plaintiff admitted, however, that he waited more than four years before beginning therapy "[b]ecause of work and I was hoping that the pain would go away." He began physical therapy in May 2012, attended seventeen sessions, and stopped going in August 2014 because he believed the therapy did not help.

Dr. Hosea did not order an MRI of plaintiff's shoulder until four and one-half years after the accident occurred. Ultimately Dr. Hosea concluded: (1) "[t]he MRI of 2012 revealed degenerative changes of the patella and the femoral trochlea[,] [i.e, the knee,] . . . directly related to the motor vehicle accident[;]" and (2) "[w]ith respect to his chronic impingement syndrome [in his shoulder,] within a reasonable degree of medical certainty[,] the accident [exacerbated] his problems with performing his activities as a barber[.]" Dr. Hosea also opined that plaintiff's occupation as a barber may have contributed to his problems with his rotator cuff.

6

On July 10, 2014, Dr. Richard A. Rosa, a board certified orthopedic surgeon and medical director at St. Barnabas Medical Center, examined plaintiff on behalf of defendant. His testimony was also presented to the jury via de bene esse deposition. Dr. Rosa reviewed plaintiff's MRI studies, physical therapy reports, and Dr. Hosea's case notes as plaintiff's treating physician. Dr. Rosa testified plaintiff complained of pain and weakness in his right shoulder, which "was localized laterally, which is the outer aspect of the shoulder[.]" According to Dr. Rosa, on a scale measuring the severity of pain from one to ten, plaintiff reported his pain severity level on an average day was seven. Plaintiff complained that his right knee had "some clicking" and rated the severity of his pain level as fluctuating between five and six. His left knee only had mild pain. Dr. Rosa testified plaintiff did not report experiencing any pain when he tested his knees to determine his range of motion. Although his right knee was more tender than the left knee, Dr. Rosa opined plaintiff's knees were "stable".

Based on his review of plaintiff's medical record as supplemented by his own medical evaluation, Dr. Rosa opined that "the strains on [plaintiff's] right knee contusion . . . were causally related to the accident." However, "[t]he arthritis was not related to the accident." Dr. Rosa characterized the arthritis as an "age appropriate . . . permanent condition," unrelated to the car accident. The

contusion or bruises were related to the accident. As in most cases, Dr. Rosa opined these bruises would heal by themselves over time. Dr. Rosa also found plaintiff had "tearing and fibrillation of . . . a piece of cartilage in the knee . . . consistent with degenerative meniscal disease[.]"

According to Dr. Rosa, the examination of plaintiff's right shoulder was "unremarkable." He did not detect any signs of "heat, [or] redness, swelling, no deformity, no obvious atrophy compared to the opposite side." Dr. Rosa testified plaintiff only exhibited a "mild degree of tenderness in . . . front of the shoulder and . . . the upper lateral aspect of the shoulder." He retained "full range of motion in all plains with discomfort at the extremes[.]" Plaintiff suffered from "subacromial impingement of the . . . rotator cuff area[,]" which is consistent with inflammation arising out of "chronic wearing of that tendon[.]"

Dr. Rosa concluded the reported tear "most likely represented an aggravation of the pre-existing . . . but previously a[s]ymptomatic condition[,] meaning that . . . the [SLAP] tear that we saw on the MRI . . . was a result of the accident[.]" He also determined the tear was a "permanent condition." Although a cursory review of Dr. Rosa's testimony appears to support plaintiff's claim of a permanent injury, Dr. Rosa clarified that: "the initial condition was not

causally related to this accident" because a single incident usually does not cause the "grade three" tear that plaintiff possesses. Dr. Rosa opined the SLAP tear, which is a permanent condition, existed for six years before the accident and became symptomatic after the accident.

The three-day trial ended when the jury returned its verdict in favor of defendant. The verdict sheet reflected that all six jurors checked the box marked "No" in response to the following question: "Do you find that Plaintiff, Gary S. George, has proven by a preponderance of the objective credible medical evidence that he sustained a permanent injury as a proximate result of the accident on February 1, 2008?"

## II

Plaintiff moved for a new trial under Rule 4:49-1. The motion was heard and decided by a different judge because the trial judge had retired by the time the attorneys appeared for oral argument. Plaintiff argued the jury's verdict was against the weight of the evidence because all of the evidence produced at trial, including Dr. Rosa's testimony, established plaintiff sustained a permanent injury to his shoulder and both knees as a proximate cause of the accident. Plaintiff thus claimed he was entitled to a judicial finding of permanency, within the meaning of N.J.S.A. 39:6A-8(a), as a matter of law. Defendant argued that

Dr. Rosa made clear that plaintiff's injury originated six years before the accident. The jury correctly found that any physical injuries plaintiff sustained in the accident were insufficient to satisfy the permanency requirements under N.J.S.A. 39:6A-8(a).

The judge assigned to decide this matter provided the following explanation in support of his decision to deny plaintiff's motion for a new trial:

> I have the doctor's . . . de bene esse deposition. I've seen it, frankly. . . . [H]is opinion is that the shoulder [injury] was not permanent. The function of the shoulder was not permanently impaired by this motor vehicle accident and that the supposedly permanent tear of the shoulder would not have been caused by any accident. It was degenerative, arthritic . . . and he also said that the shoulder is fine.
>
> So . . . I don't see any basis. This is the jury's determination. They heard the doctor's testimony. The doctor did give his opinion . . . [with a] reasonable degree of medical certainty or probability that this is not a permanent injury and even if . . . you have a shoulder that's injured and the accident causes some aggravation, this aggravation is not permanent[.] . . . [T]herefore I don't find that there is any basis for overturning the jury's verdict.
>
> I find it was sound. It was supported by the evidence and by the testimony of the doctor. The motion is denied.
>
> [(Emphasis added).]

The judge also denied plaintiff's motion for reconsideration filed pursuant to Rule 4:49-2. He found that Dr. Rosa explained that plaintiff's injuries were "degenerative" and not related to the accident. The judge found that Dr. Rosa testified that plaintiff's shoulder injury "didn't in any way limit the functioning of the . . . right shoulder [.]" Dr. Rosa particularly noted plaintiff failed to follow his own physician's treatment recommendations and waited over four years before beginning physical therapy. All of these accident-unrelated events contributed to plaintiff's present physical condition. The judge held that "there was substantial evidence, factual findings by the expert on which a jury could clearly . . . find that . . . there was no causation[.]"

Rule 4:49-1(a) provides:

> A new trial may be granted to all or any of the parties and as to all or part of the issues on motion made to the trial judge. On a motion for a new trial in an action tried without a jury, the trial judge may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.
>
> [(Emphasis added).]

We have reviewed the standard codified in Rule 4:49-1 and held that "[t]he standard for appellate review of a trial court's decision on a motion for a new trial is substantially the same as that controlling the trial court except that due deference should be made to its 'feel of the case,' including credibility."[1] Doe v. Arts, 360 N.J. Super. 492, 502 (App. Div. 2003) (quoting Feldman v. Lederle Laboratories, 97 N.J. 429, 463 (1984)). Thus, "[a] jury verdict, from the weight of the evidence standpoint, is impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice." Doe, 360 N.J. Super. at 503 (quoting Carrino v. Novotny, 78 N.J. 355, 360 (1979)).

"A jury's verdict . . . is cloaked with a 'presumption of correctness.'" Cuevas v. Wentworth Group, 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)). A party seeking to overturn the jury's verdict must present clear and convincing evidence establishing that the verdict was a miscarriage of justice. Ibid. Most importantly, neither this court nor the trial court is at liberty to substitute its judgment for that of the jury

---

[1] Although the judge who decided plaintiff's motion did not preside over the trial, we review his factual findings with the same level of deference. As a unanimous Supreme Court recently reaffirmed: "Our system of justice assigns to the trial court the role of factfinder in matters not relegated to the jury . . . . By contrast, the task of appellate courts generally is limited to reviewing issues of law." State v. S.S., 229 N.J. 360, 380 (2017).

because the court would have reached the opposite conclusion. Baxter, 74 N.J. at 598. A judge "is not a . . . decisive juror." Dolson v. Anastasia, 55 N.J. 2, 6 (1969).

Here, the jury was charged with reviewing the evidence presented by the parties and determining whether plaintiff:

> sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
>
> [N.J.S.A. 39:6A-8(a) (emphasis added).]

We do not disturb a trial court's decision unless there has been a clear abuse of discretion. Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). A trial court abuses its discretion when: "[(1)] the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or [(2)] it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 383 (App. Div. 2015). Here, the motion judge correctly found that Dr. Rosa's testimony

supports the jury's verdict. Plaintiff's injuries proximately related to this accident were not permanent within the meaning of N.J.S.A. 39:6A-8(a).

Plaintiff's claims of permanent injuries related to this accident were based only on subjective complaints that were not verifiable by objective medical evidence. The jury was authorized to reject plaintiff's testimony as not credible. We thus discern no legal basis to disturb the motion judge's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2123-15T1