# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0799-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL CAWLEY,

    Defendant-Appellant.

_____

Argued January 20, 2026 – Decided March 24, 2026

Before Judges Natali, Walcott-Henderson, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 08-12-2127.

Roman Vaccari argued the cause for appellant (Winne, Banta, Basralian & Kahn, PC, attorneys; Michael J. Cohen, Aaron M. Drew, and Roman Vaccari, on the briefs).

Jaimee M. Chasmer, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Jamiee M. Chasmer, of counsel and on the brief).

PER CURIAM

Defendant Michael Cawley appeals from an order denying his second petition for post-conviction relief (PCR) and the subsequent denial of his motion for reconsideration surrounding his 2012 judgment of conviction and sentence for theft, kidnapping, and sexual assault. After our review of the record and application of the pertinent legal principles, we affirm.

I.

We glean the following facts from our prior opinions in defendant's direct appeals, State v. Cawley, No. A-0382-12 (App. Div. April 7, 2015) (slip op. 1-23) (Cawley I), State v. Cawley, No A-3853-19 (App. Div. Aug. 23, 2021) (slip op. 1-30) (Cawley II), and from the record. On August 20, 2005, M.L.[1] (Maria) met with D.L. (Dawn), G.F. (Gia), N.M. (Noelle), S.K. (Sue), and another friend for a bachelorette party in Manhattan celebrating Dawn's upcoming wedding. After the party concluded, the group returned to Hoboken by train at approximately 3 a.m. Upon returning to New Jersey, the group split up into two cabs. Maria, Noelle, and Gia shared a cab, intending to go to Noelle's apartment.

---

[1] For ease of reference, and to protect the privacy of the victim, we use the same initials and pseudonyms used in our prior opinions. R. 1:38-3(c)(10).

A-0799-23

Maria and Gia became sick during the trip, and their cab dropped them off on a street corner a short distance from Noelle's apartment.

Maria and Gia fell to the sidewalk and refused to follow Noelle. Noelle left to get water for Maria and Gia from her apartment, and on her way back met Gia at the entrance to her building. Noelle returned to the street corner and found that Maria had disappeared. Noelle estimated that only five to seven minutes had elapsed since she left Maria. The group then searched the area for Maria for over an hour. Calls to Maria's cell phone went directly to her voicemail. Eventually, the group returned to Noelle's apartment, called Maria's brother, and fell asleep.

Maria could not remember how she left the street corner and did not know whether she had been abducted or left voluntarily. Her memories of that morning began with her standing in a strange house with two male strangers. She was naked but for a tank top and gripped her cellphone tightly in her left hand. She testified that the men forcefully pulled her out of the house and into the back door of a blue Eddie Bauer model Ford Expedition, which she recognized because her mother owned the same model with similar trim. One of the men entered the backseat and commanded Maria remove her tank top. The other man got in the driver's seat and drove the car away from the house.

A-0799-23

While driving, the man in the backseat sexually assaulted Maria two times. When she tried to look outside of the car to see where they were, he became angry and choked her. When she tried to use her cell phone, he took it and tossed it aside. The two men began to converse in Spanish, which Maria did not understand. Eventually, Maria heard one of them say "let's get rid of her[,]" which Maria believed to mean they were going to kill her. After traveling a little while longer, the car came to a stop, and the man in the backseat shoved Maria out onto the pavement.

By that point the sun had risen, and Maria observed railroad tracks, industrial buildings, and an apartment complex. Unable to rouse anyone at the apartment complex, she dropped to the ground at a street corner and curled up in a fetal position. Eventually, a delivery person noticed Maria laying on the street corner and contacted the police. Video surveillance from the apartment complex showed a blue Ford Expedition traveling in one direction at approximately 6:40 a.m. and then returning in the other direction about one minute later but did not clearly reveal the car's license plate number. A few moments later, the recording showed Maria, clothed in only a bra, running through the complex's parking lot.

A-0799-23

Maria was transported to a hospital where she provided two statements: one to Detective Ronnie Petzinger, and the other to Beryl Skog, a sexual assault nurse examiner. During both statements, Maria appeared fearful and extremely upset and cried uncontrollably at times. Thereafter, Nurse Skog performed a forensic sexual assault medical examination and retrieved samples of semen. Testing also showed that Maria had a blood-alcohol reading of .105, and her urine tested positive for Vicodin[2], which was consistent with a prescription she had received following surgery earlier that week.

The police investigation stalled for more than one year until, in 2007, officials from the Jersey City Fire Department discovered Maria's driver's license in the center console of Bryon Chica's car while investigating a possible arson. Records indicated that Chica had owned a Ford Expedition in August 2005. Police interviewed Chica and took a buccal swab, but his DNA was not a match for the samples recovered from Maria. The police then showed a sketch of Maria's assailant to Chica's ex-wife, who directed the officers to defendant.

---

[2] Vicodin is a narcotic analgesic used to treat moderate to moderately severe pain and combines an opioid to change pain perception with acetaminophen to reduce pain. https://myclevelandclinic.org/health/drugs/19619-acetaminophen-hydrocodone-capsules-or-tablets. (last visited March 17, 2026).

A-0799-23

Motor vehicle records showed that defendant had also owned a blue Ford Expedition in August 2005.

On April 18, 2007, police interviewed defendant. After detectives read defendant his Miranda rights, he waived his right to an attorney. Approximately twenty-five minutes into the interview, detectives asked whether defendant would provide a DNA sample. Defendant replied, "[A]t this point, I think I want a lawyer." Nevertheless, the detectives continued with the interview, repeatedly requesting a DNA sample, while defendant continued to request an attorney. Eventually, defendant relented and agreed to provide a buccal swab. Subsequent analysis showed that defendant's DNA matched the DNA in the semen obtained from Maria.

The police next obtained defendant's E-ZPass records, which showed that defendant had three E-ZPass transponders on his account, and that one of the vehicles registered to use the transponders was a Ford Expedition. Statements showed one of the transponders exited the New Jersey Turnpike at 6:33 a.m. on August 21, 2005, at a toll booth about one and one-third miles from the spot where Maria was thrown from the car. Then, at 6:46 a.m., the same transponder entered the same toll booth traveling in the opposite direction. The police

A-0799-23

investigation also determined that defendant had traded in his Ford Expedition on August 22, 2005, one day after the crimes under investigation.

In December 2008, a Bergen County grand jury returned an indictment charging defendant and Chica with first-degree kidnapping, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:13-1(b) (count one); first-degree aggravated sexual assault during a kidnapping, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:14-2(a)(3) (count two); first-degree aggravated sexual assault by physical force or coercion, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:14-2(a)(5) (count three); first-degree aggravated sexual assault upon a helpless victim, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:14-2(a)(7) (count four); third-degree theft, N.J.S.A. 2C:2-6 and N.J.S.A. 20-3(a) (count five); second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:13-1(b) (count six); and second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:14-2(a) (count seven). The indictment also charged defendant alone with second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count eight).

In September 2011, the trial court conducted a multi-day suppression hearing concerning the admissibility of defendant's statement and the DNA results obtained from his buccal swab. In an opinion and order filed on October 21, 2011, the motion judge suppressed the portion of defendant's statement given

A-0799-23

after he requested counsel. However, the judge concluded that the DNA results were admissible based on the inevitable discovery doctrine.

Defendant and Chica were tried together before a jury in early 2012. Maria, Noelle, and Dawn testified, as did various law enforcement and other witnesses, all of whom provided details of the investigation that led to the arrest of defendant. Defendant testified he lived with Chica and one other roommate in August 2005. Defendant owned three vehicles, including a blue Eddie Bauer model Ford Expedition. He had three E-ZPass transponders, which he kept in a bowl at the house for Chica and another roommate to use as needed. Defendant stated on August 20, 2005, he, Chica, and their roommate went out to a nightclub in Hoboken, traveling in Chica's Expedition. While talking outside, they saw Maria walking down the block and struck up a conversation with her. According to defendant, Maria "was not drunk at all," and voluntarily returned to defendant's house, where they had consensual sex. Defendant said that when he awoke at about 10 a.m., Maria was gone. He claimed that Chica later told him that Maria had wanted to go home, so Chica and the roommate took her back to Hoboken.

At the conclusion of the fifteen-day trial, the jury found defendant guilty of first-degree kidnapping, first-degree aggravated sexual assault during a

A-0799-23

kidnapping, first-degree aggravated sexual assault by physical force or coercion, first-degree aggravated sexual assault upon a helpless victim, third-degree theft, and second-degree sexual assault. The jury acquitted Chica on all counts and acquitted defendant on the two conspiracy counts.

On July 26, 2012, the trial court sentenced defendant to consecutive prison sentences of thirty years on count one, twenty years on count four, and ten years on count eight, all subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for an aggregate sentence of sixty years of incarceration with fifty-one years of parole ineligibility. Defendant appealed, and on April 7, 2015, we affirmed defendant's conviction but remanded for resentencing. See Cawley I at 23.

On October 5, 2015, the Supreme Court granted defendant's petition for certification, "limited to the issues of whether the DNA evidence was properly admitted under the inevitable discovery doctrine and whether it was permissible for the prosecutor to use defendant's prior statements for impeachment purposes that were secured in violation of defendant's constitutional rights." State v. Cawley, 223 N.J. 278 (2015). However, exactly one year later, on October 5, 2016, the Court dismissed defendant's appeal, "having determined that certification was improvidently granted." State v. Cawley, 228 N.J. 21 (2016).

On March 9, 2017, defendant was resentenced to the aggregate sixty-year term, subject to fifty-one years of NERA parole ineligibility.

Defendant filed his first petition for PCR on June 29, 2017, listing twenty grounds for relief. On July 17, 2019, after assigned counsel was appointed, defendant submitted an amended petition, asserting grounds of ineffective counsel and prosecutorial misconduct. The PCR court heard oral argument on defendant's petition on December 6, 2019 and on December 12, 2019, denied defendant's petition and declined to grant an evidentiary hearing. Defendant appealed, and on August 23, 2021, we affirmed the denial of his PCR petition. See Cawley II at 30. The Supreme Court denied certification. State v. Cawley, 248 N.J. 594 (2021).

On June 6, 2022, defendant filed a second self-represented PCR petition, raising largely similar—if not identical—claims. The State opposed the petition, primarily contending procedural bars required the petition to be denied. On December 2, 2022, the second PCR court denied defendant's petition without an evidentiary hearing in a written opinion and order; finding all plaintiff's claims to be either untimely pursuant to Rule 3:22-12, or otherwise procedurally barred.

A-0799-23

Defendant moved for reconsideration over seven months later on July 25, 2023, arguing that the PCR petition was timely, should not have been procedurally barred, and sought the assignment of counsel and an evidentiary hearing. The PCR court denied the motion as untimely under Rule 4:49-2 and alternatively found no basis for reconsideration under the rule, noting the prior ruling was not arbitrary, capricious, or unreasonable, that it had adequately addressed each claim, and that defendant was seeking a "second bite at the apple."

On appeal, defendant argues the following points:

> POINT I
>
> WHETHER THE TRIAL COURT ERRED IN FINDING THE PCR PETITION TIME-BARRED.
>
> POINT II
>
> WHETHER THE TRIAL COURT ERRED IN SUMMARILY DENYING THE SECOND PCR PETITION WITHOUT AN EVIDENTIARY HEARING.
>
> POINT III
>
> WHETHER THE PROSECUTION'S FAILURE TO RESPOND TO THE PCR PETITION REQUIRED RELIEF OR AN EVIDENTIARY HEARING.
>
> POINT IV

A-0799-23

WHETHER THE TRIAL COURT'S FAILURE TO ISSUE SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW REQUIRES REVERSAL.

POINT V

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE RECONSIDERATION MOTION AS UNTIMELY.

POINT VI

WHETHER THE TRIAL COURT'S CUMULATIVE ACTIONS CONSTITUTED A VIOLATION OF DUE PROCESS.

## II.

"Post conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). There are "four grounds for post-conviction relief: (a) 'substantial denial in the conviction proceedings' of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any habeas corpus, common law, or statutory ground for a collateral attack." Ibid. (quoting State v. Mitchell, 126 N.J. 565, 579 (1992)). PCR cannot be used as a "substitute for direct appeal . . . nor an opportunity to relitigate cases already decided on the merits." Ibid. (internal citations omitted). A defendant bears

the burden of establishing a right to post-conviction relief by a "preponderance of the credible evidence." Ibid.

Procedurally, Rule 3:22 limits the mechanism for filing repetitive PCR petitions. In particular, Rule 3:22-4(b), in pertinent part, directs that a second or subsequent PCR petition "shall be dismissed" unless "it is timely under R[ule] 3:22-12(a)(2)[.]"

A trial court's procedural determination to deny a PCR petition without a hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)). When a PCR court does not hold an evidentiary hearing, its factual and legal conclusions concerning the merits of the petition are reviewed de novo. State v. Harris, 181 N.J. 391, 421 (2004).

Additionally, on appeal from a denial of a motion to reconsider, our review is limited, but the trial court's denial "will be set aside if its entry is based on a mistaken exercise of discretion." Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018). A "trial court abuses its discretion 'when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Ibid.

A-0799-23

(quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

Defendant contends the court erred in finding the PCR petition was time barred. Despite defendant submitting his second PCR petition over one year after the denial of his first PCR petition, he argues that his lack of timeliness should not be enforced because of excusable neglect, it would result in a fundamental injustice and the time during the appeal of his first PCR petition tolled his time to file his second PCR petition We are unpersuaded.

For a second or subsequent PCR petition to be considered timely, it cannot be filed more than one year after the latest of:

> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or
>
> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or
>
> (C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for postconviction relief is being alleged.

A-0799-23

[R. 3:22-12(a)(2).]

Although the time bar prescribed by Rule 3:22-12(a) can be extended for first PCR petitions if the defendant demonstrates "excusable neglect" or "enforcement of the time bar would result in a fundamental injustice," those extension grounds within the Rule do not apply to the time bar for second or subsequent PCR petitions. State v. Jackson, 454 N.J. Super. 284, 293-94 (App. Div. 2018) (quoting R. 3:22-12(a)(1)(A)). These procedural bars should generally be enforced because of the need to "promote finality in judicial proceedings[.]" State v. Echols, 199 N.J. 344, 357 (2009) (quoting State v. McQuaid, 147 N.J. 464, 483 (1997)).

The record demonstrates the trial court denied defendant's first PCR petition on December 12, 2019, and his second PCR was not filed until June 6, 2022. Defendant argues that the trial court did not provide an excusable neglect analysis and that the court did not address defendant's alleged showing of a fundamental injustice; but as we noted above, these reasons to extend the time bar apply to initial petitions for PCR, not subsequent PCR proceedings. In addition, an appeal of defendant's first PCR petition does not toll the time limitation of Rule 3:22-12. State v. Dillard, 208 N.J. Super. 722, 727 (App. Div. 1986); see State v. Dugan, 289 N.J. Super. 15, 19 (App. Div. 1996).

15

Here, because defendant's second PCR was filed well outside the statutory one-year period and none of the exceptions pursuant to Rule 3:22-12(a)(2)(A-C) were asserted or applied to the underlying facts, the trial court did not err in dismissing defendant's PCR as untimely.

Even if we consider defendant's petition to have been timely filed, we conclude other procedural bars apply. When assertions underpinning an ineffective assistance of counsel claim have already been raised on direct appeal or prior PCR proceedings, "it may be procedurally barred [] by Rule 3:22-5." McQuaid, 147 N.J. at 484. Rule 3:22-5 provides:

> A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

"'Preclusion of consideration of an argument presented in post-conviction relief proceedings should be affected only if the issue [raised] is identical or substantially equivalent' to that issue previously adjudicated on its merits." McQuaid, 147 N.J. at 484 (quoting State v. Bontempo, 170 N.J. Super. 220, 234 (Law Div. 1979)). If the merits to a ground for relief have been adjudicated in either the proceedings that led to the conviction or any subsequent PCR proceedings, that adjudication is "conclusive". R. 3:22-5.

16

Also, even if claims were not raised in an earlier petition, if they could have been raised on direct appeal they will be procedurally barred from later PCR petitions. See State v. Szemple, 247 N.J. 82, 98 (2021) ("Rule 3:22-4(a) bars petitions that rely on grounds that could reasonably have been—but were not—raised during direct appeal, unless an exception applies."); McQuaid, 147 N.J. at 483 (determining a defendant "may not use post-conviction relief to assert a new claim that could have been raised on direct appeal").

A review of the record shows that defendant's grounds in his second PCR petition are substantially identical to his first PCR petition and his direct appeal, which was denied by both the trial court and this court in Cawley I and Cawley II. The claims in the current petition are: (a) trial counsel failed to challenge the admissibility of the DNA evidence under the inevitable discovery doctrine; (b) improper admission of DNA evidence; (c) the manner in which physical helplessness was presented to the jury in the instruction deprived defendant of due process and fair trial; (d) the imposition of an illegal sentence by the trial court: trial and appellate counsel failed to challenge the improper jury instructions such as the "absence" of a specific unanimity charge; (e) trial and appellate counsel failed to challenge the improper sentence; trial and appellate counsel failed to investigate witnesses and third-party guilt defendants; (f)

17

actual innocence; and (g) exculpatory evidence was withheld from discovery that denied defendant a fair trial.

We conclude all these claims were previously addressed or could have been raised in the underlying trial proceeding or subsequent PCR petitions. Defendant has not raised any new claims nor any newly discovered evidence to support his second petition for PCR.

Even if we address the merits of his second PCR petition concerning his claim that first PCR counsel was ineffective, we conclude this argument lacks sufficient support. Claims of ineffective assistance of counsel concerning PCR counsel are governed by a separate standard from those asserted against trial counsel. "[PCR] relief is not predicated upon a finding of ineffective assistance of counsel under the relevant constitutional standard . . . [as] Rule 3:22-6(d) imposes an independent standard of professional conduct upon an attorney representing a defendant in a PCR proceeding." State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010); see Strickland v. Washington, 466 U.S. 668, 687 (1984).

> PCR counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward. Thereafter, counsel should advance all of the legitimate arguments that the record will support. If after investigation counsel can

formulate no fair legal argument in support of a particular claim raised by defendant, no argument need be made on that point. Stated differently, the brief must advance the arguments that can be made in support of the petition and include defendant's remaining claims, either by listing them or incorporating them by reference so that the judge may consider them.

[State v. Webster, 187 N.J. 254, 257 (2006) (quoting State v. Rue, 175 N.J. 1, 18-19 (2002)).]

"The remedy for counsel's failure to meet the[se] requirements . . . is a new PCR proceeding." Hicks, 411 N.J. Super. at 376 (citing Rue, 175 N.J. at 4).

A review of the record demonstrates first PCR counsel was not ineffective under the applicable legal standards. While defendant asserts he was "legally abandoned," the record reflects his PCR counsel submitted a lengthy brief to the court that incorporated all of defendant's arguments, appeared for oral argument, and requested an evidentiary hearing. Defendant appears to be dissatisfied with the outcome of his first PCR proceeding because his PCR counsel did not copy his brief word-for-word. Rule 3:22-6(d) does not require counsel to parrot defendant's exact arguments, nor does defendant point to any new arguments which his PCR counsel should have asserted or how he was prejudiced by counsel's performance.

Turning to the court's denial of defendant's motion for reconsideration, because we have concluded the trial court's order denying defendant's PCR

petition was appropriate, we determine the court's denial of defendant's reconsideration motion did not constitute an abuse of discretion.

To the extent we have not specifically addressed any of defendant's remaining legal arguments we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0799-23